# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, *on behalf of its members and members' patients*,<br>COUNCIL OF UNIVERSITY CHAIRS OF OBSTETRICS AND GYNECOLOGY, *on behalf of its members and members' patients*,<br>NEW YORK STATE ACADEMY OF FAMILY PHYSICIANS, *on behalf of its members and members' patients*,<br>SISTERSONG WOMEN OF COLOR REPRODUCTIVE JUSTICE COLLECTIVE, *on behalf of its members and members' patients*, and<br>HONOR MACNAUGHTON, M.D.,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES FOOD AND DRUG ADMINISTRATION,<br>STEPHEN M. HAHN, M.D., *in his official capacity as Commissioner of Food And Drugs, and his employees, agents and successors in office,*<br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES and ALEX AZAR, J.D., *in his official capacity as Secretary, United States Department of Health and Human Services, and his employees, agents and successors in office*,<br><br>        Defendants. | Civil Action No. TDC-20-1320 |

**MEMORANDUM OPINION**

    Plaintiffs American College of Obstetricians and Gynecologists ("ACOG") and four other entities and individuals have filed the present action against the United States Food and Drug

Administration ("FDA"), the United States Department of Health and Human Services ("HHS"), FDA Commissioner Stephen M. Hahn, and Secretary of Health and Human Services Alex Azar in which they challenge the FDA's failure to suspend for the duration of the COVID-19 pandemic certain requirements relating to medication abortion as a violation of the Fifth Amendment of the United States Constitution. The States of Indiana, Louisiana, Alabama, Arkansas, Idaho, Kentucky, Mississippi, Missouri, Nebraska, and Oklahoma ("the States") have filed a Motion to Intervene seeking intervention as of right or, in the alternative, permissive intervention. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the States' Motion to Intervene will be denied.

## BACKGROUND

Medication abortion, the process of ending an early pregnancy by taking certain medication, typically involves two FDA-approved prescription medications: mifepristone, which blocks the body's receptors to hormones necessary to sustain pregnancy, and misoprostol, which causes uterine contractions to expel the contents of the uterus. This regimen first requires a clinician to assess a patient's eligibility for a medication abortion, a step which the FDA presently allows to take place either through an in-person assessment or entirely through an online consultation, known as telemedicine. Once a patient has been deemed eligible for a medication abortion, a clinician can issue prescriptions for the two pills and will give the patient instructions for their use and about follow-up care, including information about how to address any potentially serious complications. Under FDA requirements, the patient must pick up the prescribed mifepristone, consisting of a single tablet, at the clinician's hospital, clinic, or medical office. While onsite, the patient is required to sign a form containing information about the regimen and potential risks with the medication. The patient then may take the mifepristone orally at a location

2

of her choice, including at home. A day or two later, the patient takes misoprostol, which can be obtained through the same healthcare facility or through a mail-order or retail pharmacy. That pill also may be taken at a location chosen by the patient. Several hours later, the patient will experience cramping and bleeding that expels the pregnancy.

The focus of the present lawsuit is on the FDA's requirements relating to the first pill, mifepristone. Since mifepristone was approved for marketing by the FDA in 2000, the FDA has required the medication be dispensed in person. Since 2011, this in-person requirement, and other requirements, have been imposed under the FDA's Risk Evaluation and Mitigation Strategy ("REMS") authority, which allows the FDA to place restrictions beyond those contained on the drug's labeling to ensure that the drug's benefits outweigh its risks. Within that authority, the FDA may also impose additional Elements to Assure Safe Use ("ETASU"). Mifepristone in particular has three ETASU: (1) "In-Person Dispensing," which requires mifepristone to be dispensed only in a hospital, clinic, or medical office, by or under the supervision of a certified prescriber; (2) "Prescriber Certification," which requires prescribing clinicians to fax a form to the drug distributor attesting and agreeing to various details, and (3) "Patient Form," which requires that the patient sign a special form containing information regarding the mifepristone regimen and its risks, that the prescriber provide a copy of the form to the patient, and that a copy of the form be placed in the patient's medical file. Compl. ¶¶ 60-62, ECF No. 1.

Starting in early 2020, COVID-19, the disease caused by novel coronavirus SARS-CoV-2, has swept across the United States as part of a worldwide pandemic. During this public health emergency, the Centers for Disease Control and Prevention ("CDC"), a component of HHS, has issued guidance to health care professionals encouraging them to leverage telemedicine in order to protect individuals from COVID-19. In turn, HHS and FDA have taken steps to afford clinicians

greater flexibility and discretion in prescribing otherwise highly regulated drugs without preliminary in-person visits. Plaintiffs' claim in this action is that in the context of the dangerous conditions prevalent during the ongoing COVID-19 pandemic, Defendants' continuing requirement of in-person dispensation of mifepristone, despite the availability of telemedicine and mail-order services for obtaining the drug, creates an undue burden on women seeking medication abortions, in violation of their constitutional rights.

## DISCUSSION

In their Motion, the States seek intervention as of right in this case pursuant to Federal Rule of Civil Procedure 24(a) or, in the alternative, permissive intervention under Rule 24(b). Defendants do not oppose the States' Motion. Plaintiffs contend that the Motion should be denied because the States do not meet the requirements for either mandatory intervention or permissive intervention under Rule 24.

**I.    Intervention as of Right**

A party may intervene as of right when it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The United States Court of Appeals for the Fourth Circuit has interpreted this language to require a party seeking to intervene as of right to meet four requirements: the intervenor must (1) submit a timely motion to intervene; (2) demonstrate a "direct and substantial interest" in the property or transaction at issue; (3) prove that the interest would be impaired if intervention was not allowed; and (4) establish that the interest is inadequately represented by existing parties. *Richman v. First Woman's Bank*, 104 F.3d 654,

659 (4th Cir. 1997). The parties do not dispute the timeliness of the States' Motion. Therefore, the Court will focus on the remaining three factors.

### A. Direct and Substantial Interest

A direct or substantial interest exists when a party "stand[s] to gain or lose by the direct legal operation of the district court's judgment" in the underlying action. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). According to the States, intervention is warranted because the resolution of the present case may impact the enforcement of each State's own laws that relate to or reference the FDA's regulation of mifepristone.

Upon review of the statutes of each of the ten States, however, the Court finds that while many of them restrict medication abortion in ways consistent with the principles underlying the FDA's existing requirements, the vast majority are not facially linked in any way to the enforcement of the FDA's requirements at issue in this case, such that the resolution of this case would not impair those States' ability to enforce their own laws regulating mifepristone. *See United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009) ("A court must carefully analyze whether the proposed intervenor's asserted interest really is bound up with the subject matter of the litigation."). For example, several of the laws require or arguably require a physician, prior to prescribing or dispensing mifepristone, to perform an "in person" examination, a requirement not imposed by the FDA, which allows the pre-prescription assessment to be completed through an online consultation rather than only in person. *See* Ind. Code § 16-34-2-1(a)(1) (West 2006) ("A physician shall examine a pregnant woman in person before prescribing or dispensing an abortion inducing drug," where "'in person' does not include the use of telehealth or telemedicine services"); Ala. Code § 26-23E-7 (LexisNexis 2016) (stating that a physician must "first examine the pregnant woman in person" prior to giving, selling, dispensing, administering,

5

or otherwise providing or prescribing the abortion-inducing drug); Miss. Code. Ann. § 41-41-107(2) (West 2007) (stating that a physician dispensing or administering the abortion-inducing drug "must first physically examine the woman" before providing the drug); Idaho Code § 18-617(2)(b) (West 2006) (requiring that a physician dispensing a medication abortion drug must have "the ability to assess the duration of the pregnancy accurately" and determine, "if clinically feasible, that the unborn child to be aborted is within the uterus and not ectopic").

Other state statutes require that a medication abortion drug be taken or administered in the presence of a physician, a restriction which is more restrictive than the FDA ETASU permitting the patient to ingest the mifepristone pill at a location of her choice, including at home. *See* Ky. Rev. Stat. Ann. § 311.728 (West 2018) (stating generally that a physician performing or inducing an abortion "shall be present in person and in the same room with the patient"); La. Stat. Ann. § 40:1061.11(A) (2016) (stating that when a drug or chemical is used to induce abortion, the prescribing physician "shall be in the same room and in the physical presence of the pregnant woman when the drug or chemical is initially administered, dispensed, or otherwise provided"); Mo. Rev. Stat. § 188.021(1) (West 2017) (stating that when mifepristone is used to induce an abortion, the "initial dose of the drug or chemical shall be administered in the same room and in the physical presence of the physician" prescribing the drug); Okla. Stat. tit. 63, § 1-729.1 (West 2016) (stating that when mifepristone is used to induce an abortion, the "physician who is prescribing, dispensing, or otherwise providing the drug or chemical shall be physically present, in person, in the same room as the patient when the drug or chemical is first provided to the patient"); Neb. Rev. Stat. § 28-335(2) (West 2009) (stating that no abortion shall be performed unless the physician who prescribes the drug is physically present in the same room with the patient

6

when the physician induces the abortion). Thus, these two categories of state statutory provisions impose different restrictions than those contained in the FDA requirements.

In *Brewer v. Republic Steel Corp.*, 513 F.2d 1222 (6th Cir. 1975), a case in which a state civil rights commission sought to intervene in an employment discrimination case under federal law out of a concern that the result might impair its ability to enforce state civil rights laws against the same defendant, the court held that the state entity did not have a basis for mandatory intervention because its duty and interest was to enforce the state civil rights statutes, not the parallel federal laws, and while the "federal and state provisions . . . overlap in application they nevertheless "provide separate and independent avenues of relief" and were not to be "pursued through a unitary enforcement procedure." *Id.* at 1223–24. Here, the state statutory provisions referenced above do not refer to the related FDA requirements, much less condition the applicability of the states' restrictions on the enforceability of the FDA requirements. Thus, even though they are part of state statutory schemes addressing medication abortion that are related to the FDA regulatory regime, they are independent of the federal scheme and are not subject to "unitary enforcement." *Id.* Even if this Court were to grant Plaintiffs' requested relief of an injunction temporarily barring the FDA from enforcing its in-person dispensation requirement during the COVID-19 pandemic, such a ruling would not pass judgment on the constitutionality or enforceability of these state statutes and would not prevent these states from continuing to enforce them. The Court therefore finds that Louisiana, Alabama, Idaho, Kentucky, Mississippi, Missouri, Nebraska, and Oklahoma do not have a direct interest in this case that would be impaired by its outcome. *See id.*

Only the Indiana and Arkansas statutes make any reference to the FDA requirements at issue in this case. *See* Ind. Code § 16-34-2-1(a)(1); Ark. Code Ann. § 20-16-1504 (West 2018).

7

In Indiana, "[i]n accordance with FDA guidelines, the physician shall provide the pregnant woman with a copy of the manufacturer's instruction sheets and require that the pregnant woman sign the manufacturer's patient agreement form." Ind. Code § 16-34-2-1(a)(1). The reference to FDA guidelines does not necessarily create a direct and substantial interest in intervention. In *Blake v. Pallan*, 554 F.2d 947 (9th Cir. 1977), in which a state securities law commissioner sought to intervene in a case that involved the interpretation of both federal and state securities laws, the court rejected the argument that the state had an interest in the case warranting intervention on the grounds that the state securities laws were "drawn in large part from" the federal statutes and that the outcome of the underlying case would "affect the nature and course of the administration and enforcement of the [state] law." *Id.* at 952. The court found that even though the state securities laws were "modeled to some degree" on the federal securities laws and "references in the former are made to the latter," there was "nothing to suggest that the two statutory schemes are to be interdependent rather than separate, autonomous systems." *Id.* The court therefore concluded that where "the district court . . . need not interpret or even make reference to the state law in order to apply the federal law," the state government lacked grounds for mandatory intervention. *Id.* Here, although the Indiana provision appears to reference the FDA's existing requirement relating to the provision and signing of instruction sheets, Plaintiffs have asserted that they are not challenging this requirement except to the extent that it could be construed as requiring those steps to occur in-person, and they are not seeking any change to the FDA guidelines themselves. Moreover, even if Plaintiffs were successful in securing an injunction against the FDA enforcing any in-person requirement for the exchange and signing of these documents, the phrase "in accordance with FDA guidelines" does not signify that the applicability and enforceability of the Indiana law is conditioned on the FDA's ongoing enforcement of its guidelines. Where the Court will not take

action that prevents Indiana from enforcing its own laws, there is no direct and substantial interest warranting intervention. *See Blake*, 554 F.2d at 952.

As for Arkansas, one part of its statute provides that: "It shall be unlawful to knowingly give, sell, dispense, administer, or otherwise provide or prescribe an abortion-inducing drug to a pregnant woman . . . unless . . . the provision or prescription of the abortion-inducing drug satisfies the protocol authorized by the United States Food and Drug Administration, as outlined in the final printed labeling for the drug or drug regimen." Ark. Code § 20-16-1504(a)(1). The "final printed labeling" includes "the United States Food and Drug Administration-approved dosage and administration instructions for both mifepristone and misoprostol." *Id.* § 20-16-1504(a)(2). This provision more closely links the Arkansas law to the FDA requirements. Even so, where the statute apparently seeks to bar the dispensing of mifepristone in the absence of compliance with the FDA's requirements in the REMS and ETASU, including the in-person dispensing requirement, it is not clear that Plaintiffs' requested remedy, an injunction barring FDA from enforcing that requirement, would cause the Arkansas statute to now permit dispensing other than in-person, since an order barring FDA enforcement would not actually change the contents of the "final printed labeling," the REMS, or the ETASU. Nevertheless, the Court need not decide whether this statutory provision gives Arkansas a direct and substantial interest because, as discussed below, the States, including Arkansas, still fail to meet the remaining requirements for mandatory intervention under Rule 24. *See infra* part I.C.

Finally, the States argue that even if they have no direct interest at stake in this case, they still have a substantial public interest in protecting their citizens from certain dangers, such as the risks of medication abortion, human trafficking, diversion of drugs, and overuse of the Medicaid system to address abortion complications. Though each state may have an articulated interest in

9

continuing to regulate abortion procedures for these reasons, the resolution of this case will not eliminate any state's ability to continue to regulate medication abortion, as they choose, above and beyond the FDA's requirements. As a result, these broader policy interests supported by the States cannot serve as a basis for mandatory intervention. *See Blake*, 554 F.2d at 953 (holding that it would be "impractical to base a finding of sufficient interest for purposes of establishing intervention of right solely on public interest grounds").

### B. Impairment of Interest

Even if the States could show a direct and substantial interest in the outcome of this case, they must also show that denial of the Motion would result in the "[p]ractical impairment" of the movant's ability to protect its interest. *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986). Here, the States argue that their interest may be impaired because an unfavorable ruling would either render their own laws unenforceable or would reach legal or factual determinations that would make their abortion statutes "harder to defend." Mot. Intervene at 7, ECF No. 51-1.

In the Complaint, Plaintiffs do not seek the invalidation of the States' abortion laws, and, as discussed above, a grant of relief to Plaintiffs will not directly render those laws unenforceable. *See supra* part I.A. To the extent that an unfavorable ruling in this case, which would have no precedential effect in the States, arguably could be used by opponents in future litigation relating to the States' laws and thus make those cases "harder to defend," it would not create an impairment warranting mandatory intervention. As Plaintiffs have noted, every case has the potential to create new legal precedent or persuasive authority, so the application of mandatory intervention under Rule 24 must be governed by a more exacting limiting principle than the notion that other laws will become "harder to defend and enforce." Mot. Intervene at 7. *Cf. Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (concluding that "measured against the Rule 24

requirement that it be a direct, substantial, legally protectable interest" the proposed intervenor's "interest in the collateral estoppel effect of the jury's verdict [was] too collateral, indirect, and insubstantial to support intervention as of right") (citations omitted)). The Court therefore finds the States' claims of impairment of a direct and substantial interest unconvincing.

### C. Adequacy of Representation

Finally, even if the States could demonstrate impairment of direct and substantial interests, the Court must consider whether Defendants' representation of the States' interests are adequate. Where the existing parties' interests diverge from those of the proposed intervenor, the burden of showing inadequacy of representation is "minimal." *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 122 (4th Cir. 1981) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Where, however, "the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented" unless the proposed intervenor can show "adversity of interest, collusion, or nonfeasance." *Virginia v. Westinghouse Elec. Co.*, 542 F.2d 214, 216 (4th Cir. 1976).

The States argue that the FDA cannot adequately represent their interests because "where the moving party has a different objective than the parties already in the case, then no adequate representation of interests exists." Mot. Intervene at 10. The States characterize their interest in this case as "defend[ing] the constitutionality of the FDA's regulations in order to safeguard their own abortion laws which are implicated in this lawsuit" and assert that this particular interest is "almost certainly not the objective of the existing Defendants." *Id*. The States frame their interests as "much different" from the existing Defendants' interests: while Defendants may be primarily

concerned with the safety and efficacy of mifepristone as an abortion drug, the States are concerned about the secondary, public effects that may occur in the absence of regulation. *Id*.

The States, however, conflate the interests underlying their enactment and enforcement of laws governing the mifepristone regimen with their interests as putative parties in this case, only the latter of which is relevant to this Court's determination on mandatory intervention. In *Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013), a case against the State of North Carolina challenging the constitutionality of a North Carolina statute relating to abortion, the Fourth Circuit upheld the denial of a motion to intervene on the side of the State filed by various medical professionals, pregnancy counseling centers, and individuals. *Id.* at 347. In addressing the question of adequacy of representation, the court found that the interests of the putative intervenors were aligned with those of the State, because they shared the "same ultimate objective" in that "[b]oth the government agency and the would-be intervenors want the statute to be constitutionally sustained." *Id.* at 352. In the same way, even though the States are also concerned about any potential impact on their own state laws from the resolution of this present case, their desired outcome in the litigation is the same as Defendants' goal: for the FDA regulations to be upheld as constitutional. Accordingly, they share the "same ultimate objective" in the litigation such that there is a presumption that their interest will be "adequately represented" by Defendants, and the States "must mount a strong showing of inadequacy" in order to rebut that presumption. *Id.* at 352; *see Westinghouse Elec. Co.*, 542 F.2d at 216.

The States argue that there is in fact a demonstrated "adversity of interest" to overcome the presumption, *Westinghouse Elec. Co.*, 542 F.2d at 216, arising from the fact that Defendants "are unlikely to tailor their argument to the objective of preserving state laws should the REMS be enjoined" because "it is possible that the existing Defendants may need to make legal arguments

12

that are divergent or adverse to [the States'] interest," such as by focusing on the FDA requirements and not on any specific state statute. Mot. Intervene at 11. Notably, the States are not even arguing that there currently exists any disagreement on the approach in the case, but instead ask this Court to grant intervention based on speculation that the Defendants and the States may not be aligned in their litigation strategy. Regardless of whether there would ever be such a disagreement, it would not support a finding of inadequacy of representation. As the Fourth Circuit stated in *Stuart*, "the relevant and settled rule is that disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." *Stuart*, 706 F.3d at 353. Even if the States' interests in defending the FDA's regulations are "stronger" and more "specific" than the agency's general interest, such differences "do not adverse interests make—and they surely cannot be enough to establish inadequacy of representation since would-be intervenors will nearly always have intense desires that are more particular" than the defendant's interests. *Id.* "Allowing such interests to rebut the presumption of adequacy would simply open the door to a complicating host of intervening parties with hardly a corresponding benefit." *Id.* Based on these principles, the *Stuart* court rejected the argument that the putative intervenors' disagreement with the State's litigation strategy, under which it chose not to present evidence at the hearing on a motion for a preliminary injunction, showed an adversity of interest. *Id.* at 352. Likewise, potential disagreements between Defendants and the States on how to advance this litigation do not reveal adversity of interest or inadequate representation of interests.

Furthermore, the States' claim that Defendants will not adequately represent their interests is particularly unconvincing where Defendants are the United States government. "In matters of public law litigation that may affect great numbers of citizens, it is the government's basic duty to represent the public interest," and that "representative function is perhaps at its apex where, as here

13

. . . [there is] a constitutional challenge." *Id.* at 351. When a governmental action is challenged, "it is difficult to conceive of an entity better situated to defend it than the government." *Id.* Just as the state government was deemed fully adequate to defend a state statute and the interests of the putative intervenor citizens in *Stuart*, here, the federal government can be counted on to adequately defend the federal regulatory requirements, particularly where one of Defendants is the FDA, the federal regulatory body with the authority and responsibility to protect against the potential dangers of certain medications. *See Wyeth v. Levine*, 555 U.S. 555, 567 (2009) (discussing the enlargement of the FDA's powers, through the Federal Food, Drug, and Cosmetic Act, to "protect the public health" and "assure the safety, effectiveness, and reliability of drugs"). Thus, the States have not provided strong evidence demonstrating that the FDA has an adverse interest.

Finally, the FDA, having already filed its brief with exhibits vigorously opposing the Motion for Preliminary Injunction, cannot be deemed to have engaged in collusion with Plaintiffs or nonfeasance. *See Westinghouse Elec. Co.*, 542 F.2d at 216. The States therefore cannot overcome the presumption that the FDA can adequately represent them in the present case. Where the States have not satisfied all four requirements for mandatory intervention, the Court will deny the Motion as to mandatory intervention.

## II.     Permissive Intervention

Permissive intervention may be allowed "on timely motion" to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion under Rule 24(b), the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). A decision to grant or deny permissive intervention otherwise lies within the

sound discretion of the trial court. *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982)).

When considering whether to permit intervention, this Court may consider factors such as concerns about judicial economy. *See In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991). "It is incontrovertible that motions to intervene can have profound implications for district courts' trial management functions," as additional parties can complicate all aspects of litigation, including discovery, motion practice, settlement, and trial. *Stuart*, 706 F.3d at 350. This concern is of particular significance "where, as here, the proposed intervenors are themselves differently situated entities" in that the intervenors are a group of states with unique and independent statutory schemes, all different from both the FDA requirements and each other. *Id.* Where, in *Stuart*, the Fourth Circuit found that the district court "rightly expressed . . . concern that adding three groups of intervenors would necessarily complicate the discovery process and consume additional resources of the court and the parties," the Court finds that those concerns are even more heightened where the number of would-be intervenors with their own unique issues is more than triple that number, standing at ten different States. *Id.* Where the Court has found that intervention is not mandatory in part because Defendants will adequately represent the States' interests, such that "the existing [d]efendants are zealously pursuing the same ultimate objectives," the benefits of intervention are outweighed by the likely undue delay. *See Stuart*, 706 F.3d at 355. *See also Makhteshim Agan of N. Am., Inc. v. Nat'l Marine Fisheries Serv.*, No. PWG-18-0961, 2018 WL 5846816, at *6 (D. Md. Nov. 8, 2018) (stating that where intervention as of right is decided based on the government's adequate representation, "it suggests the opportunities for the would-be intervenor to make meaningful contributions to the case are likely to be limited").

Apart from issues relating to judicial economy, permissive intervention is also not advisable because it would result in the injection of issues relating to numerous different state laws into a case that, based on Plaintiffs' Complaint, focuses squarely on federal regulations. Although the States are not necessarily asking for this Court to rule on the validity of their own state laws, intervention would require the Court to grapple with issues of the laws of ten different states, none of which are in this circuit. While all federal courts are capable of analyzing any state's laws, where the state statutes generally have no direct link to the FDA requirements at issue, these issues are better addressed through separate litigation in federal districts within those states. *Cf. Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) (noting the public interest in having a case tried in a forum familiar with the governing law).

Finally, to the extent that the States may be able to provide additional information that will help this Court resolve the question of whether the in-person dispensing requirement is constitutional under the present circumstances, that information can be adequately and most appropriately conveyed through an amicus brief. *See McHenry v. Comm'r of Internal Revenue,* 677 F.3d 214, 227 (4th Cir. 2012) ("Numerous cases support the proposition that allowing proposed intervenor[s] to file an amicus brief is an adequate alternative to permissive intervention."); *see also Stuart*, 706 F.3d at 355 (concluding that denial of intervention "does not leave [the parties] without recourse" as the intervenors "retain the ability to present their views . . . by seeking leave to file amicus briefs"). Indeed, several other states, as well as medical associations, have already filed amicus briefs to offer their additional perspectives, and Plaintiffs have consented to the acceptance of the States' proposed brief in opposition to the Motion for a Preliminary Injunction as an amicus brief. The Motion will therefore be denied as to permissive intervention as well.

16

## CONCLUSION

For the foregoing reasons, the States' Motion for Intervention will be DENIED. The States' Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction shall be accepted and construed as an amicus brief. A separate Order shall issue.

Date: June 15, 2020

/s/ *Theodore D. Chuang*
THEODORE D. CHUANG
United States District Judge