July 6, 2020

**VIA ECF**

The Honorable Theodore D. Chuang
United States District Judge
U.S. District Court for the District of Maryland
6500 Cherrywood Lane, Suite 245A
Greenbelt, MD 20770

> Re: *American College of Obstetricians and Gynecologists v. U.S. Food and Drug Administration*, Case No. 20-1320

Dear Judge Chuang,

On June 26, Plaintiffs submitted a supplemental authority letter notifying the Court that the Eleventh Circuit had denied an emergency motion by the defendants in *People First of Alabama v. Secretary of State for the State of Alabama*, to stay a preliminary injunction that, *inter alia*, blocked the State of Alabama from enforcing two rules relating to absentee voting during its upcoming July 14 primary run-off election. ECF No. 79 (citing No. 20-12184, 2020 WL 3478093 (11th Cir. June 25, 2020) ("Eleventh Cir. Decision")). Plaintiffs previously cited the *People First* District Court decision in support of the Motion for Preliminary Injunction. *See* ECF No. 73 ("Pls.' Reply") at 3 (citing No. 2:20-cv-00619-AKK, 2020 WL 3207824 (N.D. Ala. June 15, 2020)).

On June 29, the State of Alabama sought an emergency stay from the Supreme Court, which the Court granted on Thursday night without opinion. *Merrill v. People First of Ala.*, No. 19A1063, 2020 WL 3604049 (U.S. July 2, 2020). Notably, whereas Defendants here purport to dispute the risks posed by travel and personal contact during the COVID-19 pandemic, Alabama's stay application did not: to the contrary, in *Merrill*, the State represented that it had undertaken "extraordinary measures in response" to "the threat of COVID-19," including issuing an "emergency regulation [that] allows *any* voter who does not wish to vote in person because of COVID-19 to vote absentee" instead. Emergency Application for Stay at 1, 6-7 (emphasis in original), *Merrill*, 2020 WL 3604049 (No. 19A1063), attached hereto as Ex. 1 ("Stay Appl.").

Alabama's arguments for why it should be allowed to continue enforcing its absentee voting rules for the final two weeks leading up to the election focused on considerations entirely absent from the instant case. Alabama's principal focus in its stay application was on what it characterized as a general rule "prohibit[ing] federal courts from changing the rules of an ongoing or rapidly approaching election." *Id.* at 2; *see also id.* at 16-18 (citing *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020), and *Purcell v. Gonzales*, 549 U.S. 1 (2006); additional citations omitted). Alabama urged the Court to stay the preliminary injunction, issued 29 days before the primary election to which it (exclusively) applied, *see* Eleventh Cir. Decision at *3, because absentee voting had already been underway for three months, Stay Appl. 8, and, the State argued, "such orders 'can themselves result in voter confusion,'" *id.* at 17 (quoting *Purcell*,

The Honorable Theodore D. Chuang
July 6, 2020
Page 2

549 U.S. at 4-5). Relatedly, Alabama argued that the District Court's order, enjoining what Alabama described as "anti-fraud provisions for absentee voting" in three counties "*while absentee voting [was] already taking place*," undermined the State's ability to "uniformly administer[]" the election. *Id.* at 3 (emphasis in original) (citing *Purcell*, 549 U.S. at 4-5); *see also id.* at 17. The State asserted that its concerns "[we]re especially acute in this case," *id.* at 17*,* because the challenged requirements were purportedly put in place "in direct response to 'systematic absentee ballot fraud and abuse'" that the State alleged had "likely altered the results in several statewide races in 1994." *Id.* at 7.

Alabama's asserted concerns regarding the timing and administrability of the preliminary injunction in its stay application are specific to the elections context and inapposite to the instant case. In this case, any timing considerations weigh strongly in favor of granting Plaintiffs' requested relief: every day that the Requirement remains in effect, it is subjecting pregnant patients seeking time-sensitive health care to unnecessary viral exposure risks. Nor is there any credible concern that suspending an in-person dispensing requirement during the COVID-19 pandemic would cause confusion or otherwise be unworkable: as this Court is aware, Defendants have suspended many other in-person requirements during the COVID-19 pandemic to permit patients to receive medications from home in accordance with their clinicians' medical judgment. *See* ECF No. 11-1 (Pls.' Mem. Support Mot. Prelim. Inj.), at 14-15; Pls.' Reply 2.

In addition, while not the primary focus of its stay request, Alabama also argued that the decision below decided the constitutional question incorrectly by insufficiently valuing the State's interests. There, too, the arguments in Alabama's stay application look far different from Defendants' arguments and evidence here. Alabama argued that its requirement that all absentee votes be witnessed by a notary public or two witnesses ("witness signature requirement"), and accompanied by a copy of the voter's photo identification ("photo ID requirement"), are necessary "to combat voter fraud," and pointed to alleged incidents of "absentee-ballot fraud" as justification. Stay Appl. 14, 24. By contrast, here, Defendants do not even purport to cite a *single* piece of evidence supporting the need for the FDA's restriction on mifepristone, much less explain why *only* this safe, effective medication—not one of the 20,000 other drug products the FDA regulates—would allegedly benefit from this nonsensical requirement. Far from characterizing their interests as "[o]verwhelming," as Alabama has argued, *id.* at 22, Defendants muster only that the Requirement provides "an opportunity" for additional counseling at the time of dispensing (though the FDA does not require it), and that somehow this travel mandate will prevent delays (though the unrebutted evidence shows the opposite), *see* Pls.' Reply 12-15.

Finally, with respect to exposure to the virus, Alabama argued (unlike Defendants here) that the State already had made extensive efforts to enable Alabamians to safely exercise their constitutional right to vote without needless travel or personal contact. *See, e.g.*, Stay Appl. 1 ("Because of the threat of COVID-19, the State is allowing *any* registered voter to vote absentee" (emphasis in original)), 7 ("[T]he State has tried to make these important requirements as easy as possible to satisfy safely during the pandemic"). For instance, Alabama stated that the Governor had "granted permission for notaries public to notarize signatures remotely so that voters need not leave their homes to have an affidavit notarized." *Id.* at 7. Alabama also argued that there were workarounds that could eliminate the need for travel and personal contact in complying

2

The Honorable Theodore D. Chuang
July 6, 2020
Page 3

with the witness signature and photo ID requirements. *See, e.g.*, *id.* at 25 (asserting that witnesses to an absentee ballot can "watch[] the voter sign from a different room entirely or through a window"); *id.* at 27 (arguing that one plaintiff had regular visitors whom they could ask to make a photocopy of their identification).

   In this case, Defendants have offered no accommodation for mifepristone patients, and do not even purport to identify any workarounds that could enable patients to comply with the REMS without exposure to the COVID-19 risks inherent in travel and personal contact: The travel and personal contact is the very point of the FDA's mandate.

Respectfully submitted,

*/s/ Julia Kaye*

**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
Julia Kaye*
Anjali Dalal*
Ruth Harlow*
Rachel Reeves*
Jennifer Dalven*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
(212) 549-2650 (fax)
jkaye@aclu.org
adalal@aclu.org
rharlow@aclu.org
rreeves@aclu.org
jdalven@aclu.org

Lorie Chaiten*
1640 North Sedgwick Street
Chicago, IL 60614-5714
rfp_lc@aclu.org

*admitted *pro hac vice*

*/s/ John A. Freedman*

**ARNOLD & PORTER KAYE
SCHOLER LLP**
John A. Freedman (D. Md Bar. No 20276)
R. Stanton Jones (D. MD. Bar No. 20690)
David J. Weiner*
Jocelyn A. Wiesner*
Andrew Tutt*
Gina Colarusso*
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
john.freedman@arnoldporter.com
stanton.jones@arnoldporter.com
david.weiner@arnoldporter.com
jocelyn.wiesner@arnoldporter.com
andrew.tutt@arnoldporter.com
gina.colarusso@arnoldporter.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document will be served on the Defendants in accordance with

Fed. R. Civ. P. 5.


*/s/ John A. Freedman*
John A. Freedman
601 Massachusetts Ave., NW
Washington, D.C., 20001
T: (202) 942-5000
john.freedman@arnoldporter.com