Cite as: 592 U. S. ____ (2020)      1

ALITO, J., dissenting

# SUPREME COURT OF THE UNITED STATES

No. 20A34

FOOD AND DRUG ADMINISTRATION, ET AL. *v.*
AMERICAN COLLEGE OF OBSTETRICIANS
AND GYNECOLOGISTS, ET AL.

ON APPLICATION FOR STAY

[October 8, 2020]

    The Government seeks a stay of an injunction preventing the Food and Drug Administration from enforcing in-person dispensation requirements for the drug mifepristone during the pendency of the public health emergency. The Government argues that, at a minimum, the injunction is overly broad in scope, given that it applies nationwide and for an indefinite duration regardless of the improving conditions in any individual State. Without indicating this Court's views on the merits of the District Court's order or injunction, a more comprehensive record would aid this Court's review. The Court will therefore hold the Government's application in abeyance to permit the District Court to promptly consider a motion by the Government to dissolve, modify, or stay the injunction, including on the ground that relevant circumstances have changed. See *Febre* v. *United States*, 396 U. S. 1225, 1225–1226 (1969) (Harlan, J., in chambers); see also *Parr* v. *United States*, 351 U. S. 513, 520 (1956). The District Court should rule within 40 days of receiving the Government's submission.

    JUSTICE ALITO, with whom JUSTICE THOMAS joins, dissenting.

    The Government has filed an emergency application to stay an injunction against enforcement of a longstanding

2     FDA *v.* AMERICAN COLLEGE OF OBSTETRICIANS AND
GYNECOLOGISTS
ALITO, J., dissenting

drug-safety rule issued by the Food and Drug Administration (FDA). Six weeks have passed since the application was submitted, but the Court refuses to rule. Instead, it defers any action until the Government moves in the District Court to modify the injunction and the District Court rules on that motion, a process that may take another six weeks or more.

There is no legally sound reason for this unusual disposition. The only justification even hinted by the Court is the possibility that modification of the injunction may be required due to changes in the severity of the problems caused by the COVID–19 pandemic, but that possibility does not justify the Court's refusal to rule. Indeed, for all practical purposes, there is little difference between what the Court has done and an express denial of the Government's application. In both situations, the FDA rule may not be enforced, and in both situations, the Government is able to move the District Court to modify the injunction based on changed circumstances. See *Horne* v. *Flores*, 557 U. S. 433, 447 (2009) (Federal Rule of Civil Procedure 60(b)(5) "provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change . . . in factual conditions' . . . renders continued enforcement 'detrimental to the public interest'" (quoting *Rufo* v. *Inmates of Suffolk County Jail*, 502 U. S. 367, 384 (1992))).

There is, however, one difference (but not a legally significant one) between what the Court has done and the express denial of the Government's application. Expressly denying a stay would highlight the inconsistency in the Court's rulings on COVID–19-related public safety measures. In response to the pandemic, state and local officials have imposed unprecedented restrictions on personal liberty, including severe limitations on First Amendment rights. Officials have drastically limited speech, banning or restricting public speeches, lectures, meetings, and rallies.

The free exercise of religion also has suffered previously unimaginable restraints, and this Court has stood by while that has occurred.

In *South Bay United Pentecostal Church* v. *Newsom*, 590 U. S. ___ (2020), this hands-off approach was defended on the following ground:

> "Our Constitution principally entrusts 'the safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.' *Jacobson* v. *Massachusetts*, 197 U. S. 11, 38 (1905). When those officials 'undertake to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.' *Marshall* v. *United States*, 414 U. S. 417, 427 (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people. See *Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U. S. 528, 545 (1985)." *Id*., at ___ (ROBERTS, C. J., concurring in denial of application for injunctive relief) (slip op., at 2) (alterations omitted).

The extent of this deference was illustrated weeks later when the Court deferred to the judgment of the Governor of Nevada that attendance at worship services presented a greater threat to public health than engaging in the diversions offered by the State's casinos. *Calvary Chapel Dayton Valley* v. *Sisolak*, *ante*, p. ___. The possibility that this dubious conclusion might have been based less on science than on the influence of the State's powerful gaming industry and its employees was not enough to move the Court. Near-total deference was the rule of the day.

In the present case, however, the District Court took a strikingly different approach. While COVID–19 has provided the ground *for restrictions on First Amendment*

4 FDA *v.* AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS

ALITO, J., dissenting

*rights*, the District Court saw the pandemic as a ground *for expanding the abortion right* recognized in *Roe* v. *Wade*, 410 U. S. 113 (1973). At issue is a requirement adopted by the FDA for the purpose of protecting the health of women who wish to obtain an abortion by ingesting certain medications, specifically, mifepristone and misoprostol. Under that requirement, a woman must receive a mifepristone tablet in person at a hospital, clinic, or medical office. Electronic Court Filing in No. 8:20–cv–01320, Doc. 1–4 (D Md., May 27, 2020), p. 3. The FDA first adopted the requirement in 2000, and then included it in a package of safety requirements under express statutory authority in 2007. See 21 U. S. C. §355–1(f)(3)(C). Over the course of four presidential administrations, the FDA has enforced this requirement and has not found it appropriate to remove it. During the COVID–19 pandemic, the FDA suspended in-person dispensing requirements for some drugs, but it evidently decided that the mifepristone requirement should remain in force.

 Nevertheless, a District Court Judge in Maryland took it upon himself to overrule the FDA on a question of drug safety. Disregarding THE CHIEF JUSTICE's admonition against judicial second-guessing of officials with public health responsibilities, the judge concluded that requiring women seeking a medication abortion to pick up mifepristone in person during the COVID–19 pandemic constitutes an "undue burden" on the abortion right, and he therefore issued a nationwide injunction against enforcement of the FDA's requirement. The judge apparently was not troubled by the fact that those responsible for public health in Maryland thought it safe for women (and men) to leave the house and engage in numerous activities that present at least as much risk as visiting a clinic—such as indoor restaurant dining, visiting hair salons and barber shops, all sorts of retail establishments, gyms and other indoor exercise facilities, nail salons, youth sports events, and, of

USCA4 Appeal: 20-1824   Doc: 39   Filed: 10/08/2020   Pg: 5 of 5
Case 8:20-cv-01320-TDC   Document 132   Filed 10/09/20   Page 5 of 5

Cite as: 592 U. S. ____ (2020)    5

ALITO, J., dissenting

course, the State's casinos.* And the judge made the injunction applicable throughout the country, including in locales with very low infection rates and limited COVID–19 restrictions.

Under the approach recently taken by the Court in cases involving restrictions on First Amendment rights, the proper disposition of the Government's stay application should be clear: grant. But the Court is not willing to do that. Nor is it willing to deny the application. I see no reason for refusing to rule.

This case presents important issues that richly merit review. The District Court's decision, if reviewed, is likely to be reversed. And if the FDA is right in its assessment of mifepristone, non-enforcement of the requirement risks irreparable harm. A stay is amply warranted.

For these reasons, I respectfully dissent.

---

*See, *e.g.*, Governor Hogan Announces Next Stage Two Reopenings, Including Indoor Dining and Outdoor Amusements (June 10, 2020), https://governor.maryland.gov/2020/06/10/governor-hogan-announces-next-stage-two-reopenings-including-indoor-dining-and-outdoor-amusments/; Governor Hogan Announces Beginning of Stage Two of Maryland's COVID–19 Recovery, Safe and Gradual Reopening of Workplaces and Businesses (June 3, 2020), https://governor.maryland.gov/2020/06/03/governor-hogan-announces-beginning-of-stage-two-of-marylands-covid-19-recovery-safe-and-gradual-reopening-of-workplaces-and-businesses/.